CASE 16—ACTION FOR AN INJUNCTION.—MARCH 20.

# Burkhardt's Admr. v. Striger, &c.

APPEAL FROM KENTON CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS, AND PLAINTIFF APPEALS. AFFIRMED.

INSPECTION OF OILS—GASOLINE—FEES OF INSPECTOR.

Held:  Under Kentucky Statutes, section 2202, providing for the inspection of "all oils and fluids, the product of coal, petroleum, or other bituminous substances, by whatever name called, which may or can be used for illuminating purposes," gasoline, being an oil which may be used for illuminating purposes, though it must first be transformed into vapor, is subject to inspection; and one who sends such oil into the State for sale is liable for the inspector's fees, though the oil is not sold for illuminating purposes, and though the statute, after providing for the inspection of various articles, provides that, "except the article of oil for illuminating purposes, no penalty shall be incurred for the sale or exportation thereof without inspection."

GEORGE WASHINGTON, OF COUNSEL.

W. M. FENLEY, ATTORNEY FOR APPELLANT.

## STATEMENT OF THE CASE.

Appellant is a wholesale dealer in oils and gasoline.  Of the appellees, Striger is oil inspector for Kenton county in this State, while appellee Shearer is his deputy.

Striger, as oil inspector, brought numerous actions in the inferior courts for small sums which he claimed were due him for

services rendered in the inspection of gasoline. These suits became exceedingly vexatious and being for amounts seemingly contrived for the prevention of an appeal to the circuit court, appellant filed his petition in equity, seeking to enjoin further multiplicity of actions on the part of the inspector.

In this petition it is very distinctly and clearly alleged that the inspector's bills were false, fraudulent and untrue; that he and his deputy had repeatedly made out bills for which they had rendered no services whatever, nor even attempted it; that, they had designedly cut up their accounts in such a way as to deprive appellee of his right to appeal to the circuit court, and that the inspector threatened to continue such a course as would keep his cases out of that court, and thus enable him to enforce his demand.

.Other and material allegations are to the effect,

1. That gasoline is not an illuminant within the provisions of section 2202 of the Kentucky Statutes.

2. That the test prescribed by section 2205 of the Kentucky Statutes, can not, by any possibility, be applied to gasoline.

3. That appellant had never sold gasoline for illuminating purposes, but on the contrary, had always a card upon the faucet of the tank wagon in bold letters stating, "*Not sold* for illuminating purposes.

4. That inspector had not even attempted to make the inspection contemplated by the statute (sec. 2205 and could not do so.

We think it must be very clear to the court that if either of the foregoing propositions are established by a preponderance of the evidence, then the appellee should succeed the judgment of the court below be reversed, and the cause be remanded with directions to perpetuate the injunction.

### QUESTIONS OF LAW AND AUTHORITIES.

Injunction. Civil Code, sec. 276, Shinkle v. The City of Covington, 83d Ky., page 420. Judgment of Chancellor. Stephens & Co v. Dickerson & Co., 19th Ky. Reporter, 1223.

### CONSTRUCTION OF STATUTES.

Kentucky Statutes, secs. 2190, 2202, 2205, 2206, 2207.

### QUESTIONS OF FACT.

1. Is gasoline an illuminant? Kentucky Statutes, sec. 2205.

2. Can the formula prescribed by the statutes for inspection, be applied to gasoline? Kentucky Stattes, sec. 2205.

Burkhardt's Admr. v. Striger, &c.

3. Has appellant sold gasoline, or brought it into the State to be sold, as as illuminant?

4. Has the inspector the right to charge fees for inspections he has not made and can not make?

D. A. GLENN, FOR APPELLEE.

Fred Burkhardt in the name of Burkhardt & Co., was for many years engaged in business in Cincinnati, Ohio, in the sale and delivery of oils, gasoline, etc., and had an extensive trade in the city of Covington, having several wagons running, from which the goods were sold and delivered, and defendant Striger, as the oil inspector of Kenton county demanded that the goods should be subjected to his inspection before being sold by Burkhardt; all the while plaintiff was denying the right or the duty or the ability of defendant Striger to inspect same, but during the time, defendant was inspecting the goods and charging and collecting his fees therefor; several times it became necessary for the inspector to proceed by law to enforce payment of his fees; the fees for each inspection were small, and the driver did not pay at the time the service was rendered and the inspector would not rush off to plaintiff's place of business each time to collect a few cents, but would suffer the account to run until it amounted to a few dollars and then present same for payment, and all demands were met, until the accrual of those involved in this suit.

A few suits had been brought in the lower courts and appellant filed this suit and alleged the pendency of the several suits and styled them, "Multiplicity of Suits," and alleged that defendant had wrongfully and wilfully brought the same before they reached the sum of $25, thereby intending to deprive him of the right of appeal to the circuit court, and without notice obtained an injunction enjoining defendants from proceeding further.

He also alleged that gasoline could not be inspected, and had not been inspected by defendant, and that no oil or gasoline had been sold for illuminating purposes, and therefore was not subject under the law to inspection.

Defendant put all these allegations in issue and upon trial the action was dismissed and injunction dissolved, and hence this appeal.

The questions presented for decision are: (1.) Did not the injunction cease by operation of law? (2.) Should not the appeal be dismissed because the amount involved is not $200.

(3.) The construction of the inspection laws of the State which provide for the inspection of all oils and fluids, the product of petroleum.

## CITATIONS.

Chap. 71 Kentucky Statutes; chap. 71, secs. 2202, 2205, 2206, 2207, 2208, 2209; Laws of Indiana, 1863; Laws of Ohio, 1867; Code of Iowa, 1897; Page 876, chap. 2, sec. 1505.

OPINION OF THE COURT BY JUDGE DURELLE—AFFIRMING.

Burkhardt, being engaged in the wholesale oil business in Cincinnati, from which place he sent oil and gasoline into this State to be sold to retail dealers in Kenton county, brought suit against the 'oil inspector of Kenton county, his deputy, and a justice of the peace for an injunction to restrain the oil inspector and his deputy from bringing suit against him for fees as oil inspector for inspecting gasoline, and to prevent the justice from proceeding in such suits already brought. The ground averred for equitable intervention was that the inspector and his deputy divided their accounts for inspection into small sums, so as to prevent appeals to the higher courts, and that the injunction prayed for should be granted in order to prevent a multiplicity of suits. A restraining order was granted until the further order of the court on August 6, 1897. On September 21st a motion to dissolve the restraining order was made by the defendant, and overruled in January, 1898. It is urged that the order, while denominated a "restraining order," is, in form, an injunction; that it was granted without notice, and did not fix a time and place within 10 days of the day upon which the order was made at which the applicant should move the court or judge to grant the injunction, as required by section 276 of the Civil Code Practice. We do not think it material to consider this question, as the case has been prepared upon the merits, and the object of

the proceeding was to determine the question whether, un-
der chapter 71 Kentucky Statutes, an inspection of gasoline
is required when not sold for illuminating purposes.

Section 2202, Kentucky Statutes, provides "that all oils
and fluids, the product of coal, petroleum or other bitum-
inous substances, by whatever name called, which may or
can be used for illuminating purposes, manufactured in
this State or brought into it before the same is consumed,
used or sold to merchants or consumers within this State,
shall be inspected by an authorized inspector of this State."
Section 2204 provides for the appointment of the inspector
and his assistants, and section 2205 provides the mode in
which all oils shall be tested as follows: "(1) The water cup
shall have sufficient water in it to rise two-thirds up the side
of the oil cup. (2) Fill the oil cup with oil to be tested to
within one-eighth of an inch of the top. (3) Suspend the
thermometer so the bulb is just under the surface of the oil.
(4) Use an alcohol lamp to heat the water bath, and before
placing the light under the water cup, test the oil in the oil
cup by bringing a lighted match in contract with the sur-
face of the oil. If it does not ignite, place the lamp under
the water cup, and slowly heat the oil, not slower than one
degree of the thermometer in a minute, nor faster than two
degrees of the thermometer in a minute, moving a lighted
match across the surface of the oil at each degree the ther-
mometer rises, not more than three-eighths of an inch from
the surface of the oil. If the oil should flash, that is a lit-
tle gas burn on the surface and go out again, remove the
lamp, and as soon as the thermometer ceases to rise; test
the oil; and should it not ignite, replace the lamp, and test
the oil each degree the thermometer rises till the oil ignites
or permanently burns. As soon as the oil ignites or per-
manently burns, the degree indicated by the thermometer is

the fire test of the oil. The flame moved across the surface of the oil should not exceed that of an ordinary match." section 2202 provides that all oils and fluids specified in section 2202 that ignite or permanently burn at the temperature of 130 degrees Fahrenheit and upward shall be approved by the inspector, and the packages marked by him with his name, official character, and the words, "approved fire test," and all oils or fluids that ignite or permanently burn at a less temperature than 130 degrees Fahrenheit shall be condemned, and marked with his name, official character, and the words, "unsafe for illuminating purposes." There is a further provision in section 2207 that the oils or fluids of a fire test less than 130 degrees Fahrenheit may be used in the manufacture of gas conveyed through pipes and burnt through burners as ordinary coal gas is burnt. Section 2208 provides a penalty for selling any of the oils or fluids specified in section 2202 without having been inspected, and section 2209 provides a penalty for selling any of the oils or fluids specified in section 2202 that will ignite at a temperature less than 130 degrees, "to be consumed in this State for illuminating purposes." The chapter (71) provides for certain other inspectors than inspectors of oils, and in section 2190 provides, "Except the article of oil for illuminating purposes, no penalty shall be incurred for the sale or exportation thereof without inspection."

For appellant it is contended that, by virtue of the section last quoted (2190), it is not required that gasoline shall be inspected at all, except when sold for illuminating purposes; that it is not an illuminant, except in what is practically a gas machine; that appellant never sold gasoline for illuminating purposes, but, on the contrary, always kept a card upon the faucet of his tank wagon with the words, "Not sold for illuminating purposes." It is further

claimed that until some 18 months before the suit the inspector never attempted to make the test provided for by section 2205, and that such test, while it could be mechanically made, showed nothing except what was perfectly well known before the application of the test, to-wit, that gasoline would ignite or permanently burn at any temperature above 10 degrees below zero, Fahrenheit. Appellant contends that there is no conflict between section 2190 and section 2202, the latter of which must be construed to provide for the inspection of oil and other fluids to be sold for illuminating purposes, and that section 2205 deals solely with the articles coming within the exception made in section 2190, viz., oil for illuminating purposes. We are unable to concur in the contention of counsel. In section 2190 the words "oil for illuminating purposes" seem to us evidently an abbreviation of the description given in section 2202 of "oils and fluids, the product of coal, petroleum or other bituminous substances, by whatever name called, which may or can be used for illuminating purposes." The article upon the subject of illuminating oils does not seem to us designed merely to provide a safe illuminant for the ordinary useful purposes of life, but to be also a police measure, designed to protect the public against attempting to use oils or fluids of the description given in the act which are not safe when used as illuminants in the ordinary mode, by requiring an inspection of all oils so produced, and giving warning to the prospective consumer that the more inflammable oils are not safe when used in such manner. The use of gasoline and similar fluids as illuminants in gas machines, portable or stationary—and the portable machines are frequently seen in use on the streets—is distinctly recognized by section 2207. Nor can we see much force in the contention that gasoline can not be used for

illuminating purposes, because when used for the production of light it does not burn until transformed into vapor. It might as well be said that electricity is not used for illuminating purposes in the incandescent light, because the light is not given directly from the electricity, but from the heated carbon. It is quite true that in the case of a fluid as volatile as gasoline it is entirely unnecessary to heat the fluid in order to find out whether the temperature at which the oil ignites or permanently burns is above or below 130 degrees Fahrenheit, for the reason that gasoline will ignite at practically any temperature reached in this climate. In fact, the test provided by section 2205, subsec. 4, is not required to be applied in the case of gasoline, benzine and similar fluids; for, as will be seen by an examination of the subsection, it is only in case the oil does not ignite before being heated that the lamp is to be placed under the water cup. If the unwarmed fluid does ignite, the further test provided by subsection 4 is useless. We think the intent of the statute clear to require an inspection of all the oils and fluids described in section 2202, and that all such oils are included within the exception in section 2190. It follows, therefore, that the inspector had the right to inspect the oils sold by appellant, and was entitled to his legal fees for such inspection.

The court, therefore, properly dismissed appellant's petition, and the judgment is affirmed.

Petition for rehearing by appellant overruled.